UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ONEIDA DIAZ, INDIVIDUALLY, | § | |
| AND AS NEXT FRIEND OF | § | |
| ARMANDO RUIZ, III, A MINOR | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | JURY REQUESTED |
| KAWASAKI MOTORS CORP. U.S.A., | § | |
| KAWASKI MOTORS MANUFACTURING | § | |
| CORP., U.S.A., KAWASAKI HEAVY | § | |
| INDUSTRIES (U.S.A.), INC., KAWASAKI | § | |
| HEAVY INDUSTRIES, INC., AND | § | |
| MOTOR SPORTS CENTER, INC. *D/B/A* | § | |
| MCALLEN MOTOR SPORTS | § | |
|     Defendants. | § | |

## NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

NOW COME Kawasaki Motors Corp., U.S.A. ("KMC"), Kawasaki Heavy Industries, U.S.A., Inc. ("KHI-USA") and Kawasaki Motors Manufacturing Corp., U.S.A. ("KMM"), defendants in a cause styled, *Oneida Diaz, Individually and as Next Friend of Armando Ruiz, III, a Minor v. Kawasaki Motors Corp., U.S.A., Kawasaki Motors Manufacturing Corp., U.S.A., Kawasaki Heavy Industries (U.S.A.), Inc., Kawasaki Heavy Industries, Inc., and Motor Sports Center, Inc. d/b/a McAllen Motors Sports*, originally pending as Cause No. C-891-10-B, in the 93rd District Court, Hidalgo County, Texas, and pursuant to the terms and provisions of 28 U.S.C. §§ 1441(a) and 1446(b), hereby respectfully file this Notice of Removal of said cause to the United States District Court for the Southern District of Texas, McAllen Division. As grounds for removal, KMC, KHI-USA and KMM respectfully show the Court as follows:

# I.
# NATURE OF THE CASE

1.      Plaintiffs filed the underlying product liability action from an accident that occurred on or about May 17, 2008.   *See* Plaintiffs' Original Petition, attached as Exhibit A-2.[1]   Plaintiffs alleged that Armando Ruiz, III (then 5 years old) was riding a Kawasaki Prairie 360 ATV (the "subject ATV") when it overturned, severely injuring him. Exhibit A-2 at 4.   Plaintiffs allege Armando Ruiz, III, sustained injuries "including but not limited to the amputation of his left arm. . . ." *Id.* at 7.   Plaintiffs assert claims against KMC, KHI-USA and KMM for strict product liability, negligence and breach of warranty.   *Id.* at 5-7.   Plaintiffs seek damages including:

- physical pain and mental anguish suffered in the past;

- physical pain and mental anguish that, in reasonable probability will be sustained in the future;

- physical impairment and disfigurement in the past;

- physical impairment and disfigurement that, in reasonable probability, will be sustained in the future;

- past medical expenses;

- future medical expenses; and

- loss of future earning capacity

*Id.* at 7-8.

2.      Plaintiffs filed their lawsuit on March 26, 2010.   Exhibit A-2.

3.      Plaintiffs served Defendant Motor Sports Center, Inc. d/b/a McAllen Motor Sports ("McAllen Motor Sports) with their Original Petition on or about March 30, 2010.   *See* Certified Copy of State Court Docket Sheet, attached as Exhibit A-1.   McAllen Motor Sports

---

[1] All references to Exhibits in this Notice of Appeal may be found in KMC's Index of Matters Being Filed, which is attached as Exhibit A.

filed its original answer on April 8, 2010. *See* McAllen Motor Sports' Original Answer, attached as Exhibit A-6.

4.       On April 15, 2010, McAllen Motor Sports filed its First Motion for Summary Judgment. *See* Exhibit A-9, attached. In its motion, McAllen Motor Sports asserts it cannot be liable to Plaintiffs for their product liability claims because McAllen Motor Sports is a non-manufacturing seller as defined in Chapter 82 of the Texas Civil Practice and Remedies Code. *Id.* Under Section 82.003, a non-manufacturing seller is exempt from liability unless the plaintiff proves at least one of seven statutory exceptions. TEX. CIV. PRAC. & REM. CODE § 82.003(a). In support of its motion, McAllen Motors Sports attached the affidavit of Firelli Hernandez, the president of McAllen Motors Sports. *See* Exhibit A-9 (attached as Exhibit A to McAllen Motors Sports' motion). In his affidavit, Mr. Hernandez affirmatively disproves the applicable statutory exceptions set forth in Section 82.003. *Id.* As of the date of this filing, Plaintiffs have not filed a response to this motion, and it has not been set for a hearing. *See* Exhibit A-1.

5.       Plaintiffs served KMC with their Original Petition on April 21, 2010. *See* Service of Process for KMC, attached as Exhibit A-3. KMC served its answer on May 14, 2010. *See* KMC's Original Answer, attached as Exhibit A-11.

6.       Plaintiffs served KHI-USA with their Original Petition on April 21, 2010. *See* Service of Process for KHI-USA, attached as Exhibit A-4. KHI-USA served its answer on May 14, 2010. *See* KHI-USA's Original Answer, attached as Exhibit A-12.

7.       Plaintiffs served KMM with their Original Petition on April 23, 2010. *See* Service of Process for KMM, attached as Exhibit A-5. KMM served its answer on May 17, 2010. *See* KMM's Original Answer, attached as Exhibit A-13.

8.       KMC, KHI-USA and KMM now timely remove this suit.

9.     Plaintiffs only basis for defeating diversity jurisdiction is their addition of McAllen Motor Sports as a defendant.  However, because Texas law precludes liability against a seller of a product, and McAllen Motor Sports is being sued as a retailer and/or seller of an allegedly defective product, this removal is both proper and timely.  While all proper served co-defendants must consent to the removal of a case, when improper joinder has been alleged, "application of this requirement to improperly or fraudulently joined parties would be nonsensical, as removal in these cases is based on the contention that no other proper defendant exists." *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).  Thus, because KMC, KHI-USA and KMM, the only other defendants to have been served,  allege fraudulent joinder, McAllen Motorsports is not required to consent in this removal.

**II.**
**DIVERSITY JURISDICTION**

10.     Pursuant to 28 U.S.C. § 1441, KMC, KHI-USA and KMM remove this action to the district court of the United States for the district and division embracing the place where this action is pending.  In support of this Notice, KMC, KHI-USA and KMM show that there is complete diversity of citizenship between the Plaintiffs and the only properly named Defendants because Plaintiffs and Defendants are citizens of different states (*see* Section II(A), below), and the amount in controversy exceeds $75,000.00 (*see* Section II(B), below).  Removal is appropriate because it has been sought within (30) thirty days of KMC, KHI-USA and KMM receiving notice of this suit and because it has been less than one year since this action was originally commenced. *See* 28 U.S.C. § 1446(b).

**A.     DIVERSITY OF CITIZENSHIP**

11.     As of the date of the filing of this action, and at all times thereafter, up to and including the present, Plaintiffs are residents of the State of Texas. *See* Exhibit A-2.  Defendant

KMC is a corporation duly organized under the laws of Delaware with its principal place of business in Irvine, California.   Defendant KHI-USA is a corporation duly organized under the laws of New York with its principal place of business in Albany, New York. Defendant KMM is a corporation duly organized under the laws of Missouri with its principal place of business in Lincoln, Nebraska.   Defendant Kawasaki Heavy Industries, Ltd. ("KHI"), improperly styled as Kawasaki Heavy Industries, Inc., is a corporation duly organized under the laws of Japan with its principal place of business in Japan.[2]

12.     As set forth in detail below, the only other defendant in this lawsuit, McAllen Motor Sports, has been improperly joined in an attempt to defeat this court's diversity jurisdiction.  Specifically, Texas law precludes sellers and dealerships from liability for merely distributing an allegedly defective product.  Therefore, because there is no possibility of recovery against this in-state seller, McAllen Motor Sports' state of citizenship is irrelevant in determining the propriety of removal.  Accordingly, complete diversity of citizenship exists between Plaintiff and the remaining defendants:  KMC, KHI-USA, KMM and KHI.

### 1.     Standard of Review in Improper Joinder Cases

13:     To establish improper joinder,[3] the party seeking removal must demonstrate either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).  Under the second prong, the standard is whether the defendant has demonstrated that there is no reasonable basis to predict that the plaintiff might be able to recover against the

---

[2] According to the Hidalgo County District Clerk's docket sheet, there is no indication that a citation has been returned for KHI indicating that it has been served.  Because KHI has yet to be properly served, its consent to removal is not required. *E.g., Lewis v. Rego Co.*, 757 F.2d 66, 68 (3rd Cir. 1985).

[3] The Fifth Circuit has adopted "improper joinder" as the more appropriate term for the concept formerly referred to as "fraudulent joinder." *Smallwood v. Illinois Cent. Rail. Co.*, 385 F.3d 568, 571 n. 1 (5th Cir. 2004) (*en banc*). Although the terms substantively carry the same meaning, improper joinder is more consistent with the statutory language and thus is preferred. *Id.*

in-state defendant. "[A] removing defendant [need not demonstrate an absence of *any possibility* of recovery in state court] . . . the defendant must demonstrate only that there is *no reasonable basis* for predicting that the plaintiff will recover in state court." *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 405 (5th Cir. 2004) (emphasis in original). A "mere theoretical possibility of recovery under local law" will not preclude a finding of improper joinder. *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir. 2000); *Ross v. Citifinancial, Inc.*, 344 F.3d 458 (5th Cir. 2003).

14.     In determining whether Plaintiffs have a reasonable basis for recovery on at least one claim under state law, the district court is limited to the causes of action and allegations asserted in the complaint. *Rubin v. Daimlerchrysler Corp.*, Civ. Action No. H-04-4021, 2005 U.S. Dist. LEXIS 42102 at *5 (S.D. Tex. May 20, 2005). The removing party may not rely on causes of action or new theories of recovery not alleged in the latest petition that was on file in the state court when the case was removed. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999); *Alonso ex rel. Estate of Cagle v. Maytag Corp.*, 356 F.Supp.2d 757, 761 (S.D. Tex. 2005) (noting that although a court may consider post-removal evidence, it may not consider new theories or causes of action).

**2.     Procedure for determining a "Reasonable Basis" for Recovery**

15.     The Fifth Circuit has outlined two methods available to the district court in deciding a motion to remand based on improper joinder:  (1) the court may conduct a Rule 12(b)(6)-type analysis looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant; or (2) after examining the pleadings, the court may determine it is appropriate to pierce the pleadings and conduct a summary inquiry. *Smallwood,* 385 F.3d at 573-74.  Ordinarily, if a plaintiff can survive a Rule

12(b)(6) challenge, there is no improper joinder.   A summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.   *Id.* at 573-74.   Limited discovery into jurisdictional facts is appropriate only upon a showing of necessity and accompanied by judicial restraint.   *Id.*

### 3.   Factual Allegations are Necessary Under a 12(b)(6)-Type Inquiry

16.   In *Rios,* the Fifth Circuit reiterated the proper standard for evaluating Rule 12(b)(6) motions.   *Rios v. City of Del Rio,* 444 F.3d 417, 420-21 (5th Cir. 2006.)   According to *Rios,* the pleadings must contain either <u>direct allegations on every material point</u> necessary to sustain a recovery or else <u>contain allegations</u> from which an inference fairly may be drawn that sufficient evidence will be introduced at trial.   *Id.* (emphasis added).   Conclusory allegations or legal allegations masquerading as factual conclusions will not suffice.   *Id.* at 421 (citing *Fernandez-Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993)).   The Court is not required to conjure up un-pled allegations or construe elaborately arcane scripts to save a complaint.   *Id.* (citing *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir. 1988)).   Thus, the Fifth Circuit has consistently held that conclusory allegations and unwarranted deductions of fact are not admitted as true for purposes of ruling on a 12(b)(6) motion.   *See U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.,* 336 F.3d 375, 379 (5th Cir. 2003); *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992); *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000) ("In order to avoid dismissal for failure to state a claim, however, <u>a plaintiff must plead specific facts, not mere conclusory allegations.</u>   We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (emphasis added).

17.   In addition to the Fifth Circuit's decisions in *Smallwood* and its progeny, other federal courts have described the standard of determining improper joinder as: (1) not pleading a

factual basis for an element of the plaintiff's claim against the non-diverse defendant; (2) pleading only a legally insufficient factual basis for an element of the claim against the non-diverse defendant; and (3) pleading the "status" of the non-diverse defendant when in fact the non-diverse defendant lacks such "status." *See e.g.*, *Wells' Diary, Inc. v. American Indus. Refrigeration, Inc.*, 157 F.Supp.2d 1018, 1036-37 (N.D. Iowa 2001); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067-68 (9th Cir. 2001) (because plaintiff's negligent misrepresentation claim against the non-diverse plaintiff was based on representations that were not "material" or sufficiently specific to constitute more than "puffing," and thus representations were not actionable as a matter of law and, moreover, that failing in the pleadings was obvious under applicable state law, the non-diverse defendant was "fraudulently joined"); *Johnson v. Heublein, Inc.*, 227 F.3d 236, 240 (5th Cir. 2000) (plaintiffs failed to allege any facts, such as "alter ego" liability for a corporation's misconduct, that would reasonably demonstrate that they had an independent or derivative cause of action against the non-diverse defendant).

18.      Based on the foregoing, it is clear that the standard for determining improper joinder is based on whether Plaintiffs have pled ***specific facts*** sufficient to support an exception to liability under Texas law against McAllen Motor Sports.  Because Plaintiffs have omitted pleading any such facts, there is ***no reasonable basis*** for predicting that Plaintiffs will recover from McAllen Motors Sports in state court.

### 4.      Texas Law Requires a Seller's Liability be Based Upon a Statutory Exception

19.      As a product liability action, this lawsuit is governed by chapter 82 of the Texas Civil Practice and Remedies Code.  Chapter 82 defines a "products liability action" as:

> any action against a manufacturer or seller for recovery of damages arising out personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict

products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

TEX. CIV. PRAC. & REM. CODE § 82.001(2).[4]   Section 82.003(a) further provides that "[a] seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves . . . ." one of the several enumerated exceptions. TEX. CIV. PRAC & REM. CODE. § 82.003(a).  A "seller" under these new sections is broadly defined to include:

> . . . a person who is engaged in the business of distributing or otherwise placing, for any commercial purpose, in the stream of commerce for use or consumption a product or any component part thereof.

TEX. CIV. PRAC. & REM. CODE § 82.001(3).

20.    Defendant McAllen Motors Sports is a "seller" under the statute and, as such, is only liable for placing a product in the stream of commerce under the following legislatively limited exceptions.  The legislative exceptions are:

(1)    The seller participated in the design of the product;

(2)    The seller altered the product in such a way as to cause the damages;

(3)    The seller installed or assembled the product incorrectly causing the damage;

(4)    The seller controlled the content of deficient warnings and the harm resulted from the deficient warnings;

(5)    The seller made false factual representations or warranties about the product and the injury would not have occurred had the representation been true;

(6)    The seller "actually" knew the product was defective; or,

---

[4]  Because of Section 82.001's broad definition of "Products liability action," the statute also applies to claims concerning products brought under the Texas Deceptive Trade Practices Act. *See Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 490 (5th Cir. 1999) (concluding DTPA claim, among others, fell within the scope of Chapter 82 based upon the products liability action definition found in the statute).  However, as shown below in Section II(A)(4)(c), Plaintiffs cannot prevail on any DTPA claim because the DTPA does not apply to personal injury claims.

(7)    The manufacturer is either insolvent or not subject to the court's jurisdiction.

TEX. CIV. PRAC. & REM. CODE § 82.003.   Because Plaintiffs have not pled a single fact to support any of these exceptions, McAllen Motors Sports cannot be held liable as a nonmanufacturing seller.

21.    Plaintiffs' Original Petition does not contain a single allegation that one of the seven statutory exceptions under Section 82.003 applies, allowing them to proceed against McAllen Motors Sports.   Plaintiffs do not specifically allege any of the following:

(1)    That McAllen Motors Sports participated in the design of the ATV;

(2)    That McAllen Motors Sports altered the ATV in such a way as to cause the damages;

(3)    That McAllen Motors Sports installed or assembled the ATV incorrectly causing the damage;

(4)    That McAllen Motors Sports controlled the content of deficient warnings and the harm resulted from the deficient warnings;

(5)    That McAllen Motors Sports made false factual representations or warranties about the ATV and the injury would not have occurred had the representation been true;

(6)    That McAllen Motors Sports "actually" knew the ATV was defective; or,

(7)    That the manufacturer is either insolvent or not subject to the court's jurisdiction.

*See* Exhibit A-2 at 4-8.

### a.    There are No Factual Allegations Supporting an Exception under the Statute

22.    Other than conclusory statements, Plaintiffs failed to allege any factual basis for an independent act by McAllen Motor Sports that would satisfy one of the statutory exceptions. *Cortez v. Gen. Motors Corp.,* Civ. Action No. L-06-124, 2007 U.S. Dist. LEXIS 6892 at *7 (S.D.

Tex. Jan. 29, 2007) (rejecting plaintiff's conclusory allegations of negligence as a basis for holding a nonmanufacturing seller liable). Because Plaintiffs' pleading does not contain either direct allegations on every material point necessary to sustain a recovery or allegations from which an inference fairly may be drawn that sufficient evidence will be introduced at trial, it fails to pass muster under the required 12(b)(6)-type analysis required here. In addition, McAllen Motors Sports, with its summary judgment motion, has now produced evidence negating any factual basis for recovery as to Plaintiff's conclusory allegations.

     **b.**    **McAllen Motor Sports has Affirmatively Shown that the Statutory Exceptions are not Applicable**

23.     Shortly after being served with a copy of Plaintiffs' Original Petition, McAllen Motors Sports appeared and filed its First Motion for Summary Judgment. Exhibit A-9. Included with McAllen Motors Sports' motion is an affidavit from its president, Firelli Hernandez. Mr. Hernandez's affidavit affirmatively establishes the following facts:

(1)    McAllen Motors Sports did not participate in the design, manufacture or assembly of the subject ATV. McAllen Motors Sports does not manufacture ATVs.

(2)    McAllen Motors Sports did not alter or modify the subject ATV in any manner related to Plaintiffs' defect allegations.

(3)    McAllen Motors Sports did not assemble the subject ATV or install any component on the ATV related to Plaintiffs' claims.

(4)    McAllen Motors Sports exercises no control over the content of any warnings or instructions that accompany the ATV, and that the manufacturer solely controls the contents of any warnings or instructions with the ATV.

(5)    McAllen Motors Sports did not make any express factual representations about any aspect of the subject ATV that was incorrect and, but for which, Plaintiffs would not have been allegedly harmed.

(6)     McAllen Motors Sports does not independently verify the manufacturer's compliance with federal regulations regarding the design of ATVs. McAllen Motors Sports does not employ engineers to conduct independent testing to analyze the safety of ATVs. McAllen Motors Sports relies on the manufacturer's certification of compliance with applicable safety standards as its guide to whether a particular ATV is defective or unreasonably dangerous. As a result, McAllen Motors Sports did not have actual knowledge of a design defect in the subject ATV as alleged by Plaintiffs.

*Id.* (*See* attached Affidavit of Firelli Hernandez at ¶¶ 3-7). Plaintiffs clearly cannot prevail on their claims against McAllen Motor Sports because they are unable to satisfy any of the statutory exceptions under Section 82.003.

### c.     Plaintiffs cannot Prevail on their DTPA Claim against McAllen Motor Sports

24.     Section 82.003 applies to claims for defective products, even when those claims arise under the Texas Deceptive Trade Practices Act ("DTPA"). However, in addition to failing to comply with the requirements of Section 82.003, Plaintiffs cannot prevail against McAllen Motors Sports (or any of the Defendants) on their claim under the DTPA. *See* Exhibit A-2 (Section VIII). Plaintiffs only sue for personal injury damages. However, the DTPA expressly precludes claims for personal injuries, but for exceptions not applicable here. *See* TEX. BUS. & COMM. CODE § 17.49(e) (stating that statute does not apply to "a cause of action for bodily injury or death"); *see also Last v. Quail Valley Country Club*, L.P., No. 01-08-00759-CV, 2010 Tex. App. LEXIS 2303 at *18-20 (Tex. App.—Houston [1st Dist.] Mar. 25, 2010, n.p.h.) (affirming district court's decision granting directed verdict on plaintiff's DTPA claim for personal injuries because statute did not apply to such claims). Accordingly, Plaintiffs cannot rely on their DTPA claim to keep McAllen Motors Sports in this litigation.

25.     Plaintiffs failed to plead any facts to support a basis of recovery against McAllen Motors Sports under Section 82.003. Mr. Hernandez's affidavit positively establishes that

Plaintiff can never recover against McAllen Motors Sports. Accordingly, under Section 82.003, no viable cause of action exists against McAllen Motors Sports as a nonmanufacturing seller. *See* TEX. CIV. PRAC. & REM. CODE § 82.003. Because Plaintiffs have no basis of recovery against in-state defendant, McAllen Motors Sports, it must be ignored for the purposes of analyzing whether diversity jurisdiction exists in this lawsuit.

**B.     AMOUNT IN CONTROVERSY**

26.     Plaintiffs do not specify the maximum amount of damages sought in their Original Petition. However, it is apparent from the face of Plaintiffs' petition that the claims are likely to exceed $75,000. The amount in controversy is measured by the direct pecuniary value of the right which the plaintiff seeks to enforce or protect, or the value of the object which is the subject matter of the suit, and may include general damages, special damages, out-of-pocket loss, punitive damages recoverable under state law and attorneys' fees. *Johnson v. Carmax Auto Superstore, Inc.*, Civ. Action No. SA-08-CA-820-FB, 2008 U.S. Dist. LEXIS 107742 at *8-13 (W.D. Tex. Dec. 22, 2008); *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (citations omitted).

27.     In examining the complaint to determine whether it is "facially apparent" that the claims exceed the jurisdictional amount, the test is "whether the amount of the claim will more likely than not" exceed $75,000. *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003). A defendant may carry its burden by showing that it is facially apparent from the petition that plaintiff's claims are likely to exceed $75,000 or by presenting summary judgment-type evidence that the amount in controversy is likely to exceed $75,000. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 1998). These "tests are applied in order, and only if the 'facially apparent' test is not met, a court will require 'summary judgment' type evidence of the amount in

controversy." *Gipson v. Wal-Mart Stores, Inc.*, Civ. Action No. H-08-2307, 2008 U.S. Dist. LEXIS 88928, at *11 (S.D. Tex. Nov. 3, 2008) (citation and internal quotations omitted); *see also Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 n. 16 (5th Cir. 1995) ("The efficient procedure is to not require such 'summary judgment' proof until after the initial consideration of the face of the complaint.").

i.   **It Is Facially Apparent from Plaintiffs' Petition that the Amount in Controversy Exceeds $75,000.**

28.     Plaintiffs allege they sustained damages including:   physical pain and mental anguish suffered in the past; physical pain and mental anguish that, in reasonable probability will be sustained in the future; past medical expenses; future medical expenses; loss of future earning capacity; physical impairment and disfigurement in the past; and physical impairment and disfigurement in the future. *See* Exhibit A-2 at 7-8.   Based on the nature and extent of the damages alleged, and the type of damages being sought, it is clear and facially apparent that the amount in controversy exceeds the minimum jurisdictional amount for this Court to exercise jurisdiction over this matter.   *See e.g., Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d at 883 (facially apparent that amount in controversy exceeded $75,000 when plaintiff alleged damages for medical expenses, physical pain and suffering, mental anguish and suffering, loss of enjoyment of life, loss of wages and earning capacity, and permanent disability and disfigurement resulting from slip and fall); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (finding it was facially apparent plaintiff's claims exceeded $75,000, even though damages were not specifically pled, when plaintiff asserted damages claims for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization).

29. In this instance, Plaintiffs' personal injury claims focus on the amputation of Armando Ruiz, III's left arm. *See* Exhibit A-2 at 7. Because of this injury, Plaintiffs allege that Armando Ruiz, III will suffer lost earning capacity for his entire adult life. *Id.* When Plaintiffs seek to recover damages arising from the amputation of a limb, courts routinely find that the amount in controversy requirement is satisfied, even when the plaintiff does not allege a specific amount of damages. *E.g., Ramey v. Cantrell Mach. Co.*, Civ. Action No. 07-1286, 2007 U.S. Dist. LEXIS 66572 at *4 (W.D. La. Sept. 6, 2007) (indicating amount in controversy requirement met when plaintiff sued for partial amputation of right thumb and ruptured knee cap); *Mariner Health Care, Inc. v. Estate of Rhodes*, Civ. Action No. 5-04-CV-217, 2005 U.S. Dist. LEXIS 42650 at *5 (S.D. Miss. Sept. 27, 2005) (finding amount in controversy requirement satisfied when plaintiff sued for bilateral amputations and disfigurement); *Rolwing v. NRM Corp.*, Civ. Action No. 1:05-CV-81, 2005 U.S. Dist. LEXIS 26189 at *9 (E.D. Mo. Aug. 2, 2005) (concluding amount in controversy exceeded $75,000 when plaintiff sued for partial amputation of right hand including physical pain and suffering). Given the numerous categories of damages Plaintiffs seek, and the fact that those damages arise from an amputation of a limb, there can be no doubt that the amount in controversy in this case easily exceeds $75,000.

### III.
### NOTICE OF REMOVAL IS TIMELY

30. Because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, KMC , KHI-USA and KMM are entitled to have this cause removed to the United States District Court for the Southern District of Texas, McAllen Division. KMC, KHI-USA and KMM further show that this removal is timely sought and that this notice was filed

within thirty (30) days of receiving notice of suit.[5]   Additionally, it has been less than one year

since this action was originally commenced. *See* 28 U.S.C. § 1446(b).

## IV.
## CONCLUSION AND PRAYER

31.     All conditions and procedures for removal have been satisfied.  KMC, KHI-USA

and KMM attach copies of the processes, pleadings and orders from the Walker County District

Court's file with its Index of Matters Being Filed (Exhibit A).  KMC, KHI-USA and KMM will

also promptly give written notice of the filing of this notice of removal to Plaintiffs, as well as

promptly file a copy of the Notice of Removal with the Clerk of the District Court of Hidalgo

County, Texas.

WHEREFORE, PREMISES CONSIDERED, Defendant Kawasaki Motors Corp., U.S.A.,

Kawasaki Heavy Industries, U.S.A., Inc. and Kawasaki Motors Manufacturing Corp., U.S.A.

respectfully request that this action now pending against it be removed from the 93rd Judicial

District Court of Walker Hidalgo, Texas, to this Honorable Court for trial and determination of all

issues.

Respectfully submitted,

Jeffrey S. Hawkins
State Bar No. 09249100
Direct Line:  (210) 477-7402
Direct Fax:  (210) 477-7452
E-mail:  jhawkins@phmy.com

Jeremy R. Sloan
State Bar No. 24054995
Direct Line: (210) 477-7405
Direct Fax:  (210) 477-7456

---

[5] *See* Exhibit A-3 (showing KMC received service on April 21, 2010); Exhibit A-4 (showing KHI-USA received service on April 21, 2010); and Exhibit A-5 (showing KMM received service on April 23, 2010).

Email: jsloan@phmy.com


PRICHARD, HAWKINS, McFARLAND
   & YOUNG, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

ATTORNEYS FOR DEFENDANTS,
KAWASAKI MOTORS CORP., USA,
KAWASAKI HEAVY INDUSTRIES (U.S.A.),
INC., AND KAWASAKI MOTORS
MANUFACTURING CORP., U.S.A.

156871

17

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to all known counsel of record as set forth below, in compliance with the FEDERAL RULES OF CIVIL PROCEDURE on this 21st day of May 2010.

John M. Padilla
James G. Rodriguez
Padilla, Rodriguez & de la Garza, L.L.P.
1776 Yorktown St., Suite 110
Houston, Texas 77056

Michael L. Phifer
The Phifer Law Firm
952 Echo Lane, Suite 140
Houston, Texas 77024

Sergio Sanchez
The Sanchez Law Firm
4842 S. Jackson Road
Edinburg, Texas 78530

*Attorneys for Plaintiff*

Anthony B. James
Lisa M. Ellis
Hodges & James
115 East Van Buren Street
Third Floor, Suite 300
Harlingen, Texas 78550

*Attorneys for Defendant*
*Motor Sports Center, Inc. d/b/a*
*McAllen Motor Sports*

Jeffrey S. Hawkins
Jeremy R. Sloan